SAMUEL GREGSTEN AND ANDREW CUMMINGS

v.

THE CITY OF CHICAGO ET AL.

*Municipal Corporations—Streets and Alleys—Ground beneath the Surface—Injunctions.*

1. All statutes authorizing or legitimating acts and obstructions upon highways, which would otherwise be nuisances, are to be strictly construed.

2. In great cities the space under the surface of streets and alleys, as well as the surface, is held by the municipalities in trust for the use of the public, particularly where the fee of public streets and alleys is vested therein.

3. The occupancy of such underground space for private uses and purposes, to the exclusion of the public, is an obstruction of such street or alley and may be a nuisance.

4. A permit given by the Board of Public Works of a municipality to a private individual to use space under a street or alley, may be revoked by it whenever, in its judgment, the public interest demands it.

5. The rights of the public in streets and alleys are not to be presumed, upon mere inferences, to have been lost or surrendered; any person claiming a right to the exclusive use and occupancy of any portion thereof must make out his claim with clearness and certainty, in order to be sustained therein.

[Opinion filed June 2, 1891.]

Appeal from the Circuit Court of Cook County; the Hon. Murray F. Tuley, Judge, presiding.

Messrs. Knight & Brown, for appellants.

The permit and bond constituted between Gregsten and the city an irrevocable contract which could not be rescinded, except as provided in the contract.

That the city, independent of the provision of the charter, has the right to grant the use of this alley space, was decided by the Supreme Court in the case of Gridley v. Bloomington, 68 Ill. page 47.   In that case it is said :

"Although no license from the city to make the vault is shown, on the other hand no objection by the city is shown either to the making of the vault, the mode of its construction or the state of repair in which it has been kept; and situated as it is under the sidewalk of a public street, and for so great a length of time, we can not presume that those having charge of the streets were ignorant of its existence, or the respective rights and duties of the city and the owner of the property in relation to it.   We regard this acquiescence as a sufficient recognition by the city of authority to construct and maintain the vault in a ·prudent and careful manner."

And see Nelson v. Godfrey, 12 Ill. 20; Dillon on Municipal Corporations, Sec. 554; Fisher v. Thirkele, 21 Mich, 1.

"It is the general doctrine that municipalities under the power of exclusive control over their streets may allow any use of them consistent with the public objects for which they are held."   Dillon on Mun. Corp., Sec. 544 and 551.

We think these authorities sufficiently established the right of the appellants to occupy the alley space in question.

The consent of the city council may be inferred from long acquiescence in the use of this space, and in fact it is admitted by the city in its answer that the occupancy of the alley space was known to the city of Chicago.

Messrs. Jonas Hutchinson and Condee & Rose, for appellees.

Waterman, J.  This was a bill to restrain the city from interfering with the complainants' use and occupation of an underground space of an alley adjoining McVicker's theatre and the Tribune building in the city of Chicago.

The complainants insisted that Samuel Gregston had from the city a license to occupy the space in question, which could not be revoked unless it should be made to appear that the public interests demand such revocation, and that in this case it has not been so made to appear.

The defendants denied that any such license had ever been granted and also urged that not only was no authority from the council to make such a license shown, but that if the Board of Public Works had been authorized to make such license and had done so, the licensee had failed to comply with its terms, and the city was therefore entitled to take possession of its property.

In great cities not merely the surface of streets and alleys is held by the municipality in trust for the use of the people, but the space under as well as above ground is to be preserved for the benefit of the public, and to be devoted to such uses as it may require.  More especially is this the case where, as in Illinois, the fee of public streets and alleys is vested, not in the adjacent lot owners, but in the city.  Dillon on Municipal Corporations, Sec. 688.

The occupancy, therefore, of the underground space of a street or an alley in a great city for private uses and purposes, to the exclusion of the public, is an obstruction of such street or alley and may be a nuisance.

All statutes authorizing or legitimating acts and obstructions upon the highways which would otherwise be nuisances are to be strictly construed.  Dillon on Municipal Corporations, Sec. 657; Angell on Highways, Sec. 237.

The bill alleges that, in 1863, by an act of the Legislature, power was given to the Board of Public Works to authorize the use of the space underneath the surface of alleys in city of Chicago, and that, in pursuance thereof, the Board of Public Works did license said Gregsten to use the space in

controversy. This is denied by the answer. Counsel have not referred us to any such statute, and we are not aware of any.

It would seem from the bond produced by Gregsten, that a permit was given to him by the Board of Public Works, but we see no reason why such permit may not be revoked by the authority by which it was granted, whenever, in the judgment of such authority, the public interests demand a revocation.

Parties claiming a right to the exclusive use and occupancy of any portion of the streets or alleys of a great city should be required to make out such claim with clearness and certainty; the rights of the public can not be lost by inattention, and they are not to be presumed, upon mere inferences, to have been surrendered.

The decree of the court below is affirmed.

*Decree affirmed.*